UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| REYMUNDO SANTANA PENA, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:26-cv-11969-IT |
| | * | |
| RODNEY S. SCOTT, et al., | * | |
| | * | |
| Respondents. | * | |

MEMORANDUM & ORDER

July 10, 2026

TALWANI, D.J.

## I.    Background

Petitioner is a national and citizen of the Dominican Republic who has had lawful permanent resident ("LPR") status since October 26, 1994. Pet. ¶¶ 15–16 [Doc. No. 1]. On April 29, 2026, United States Customs and Border Protection ("CBP") detained Petitioner at Boston Logan International Airport upon his return from travel to the Dominican Republic. Id. ¶¶ 1, 4. Petitioner filed his Petition for Writ of Habeas Corpus [Doc. No. 1] on April 30, 2026, alleging that he was detained at that time at Boston Logan International Airport and that his detention violates both his due process rights under the Fifth Amendment and the Administrative Procedure Act. Id. ¶¶ 17, 25–39.[1] In his supplemental response to the court's request for

---

[1] Respondents briefly argue that Petitioner has failed to name his current custodian, the Superintendent of the Plymouth County Correctional Facility, as a respondent to his Petition. Resp. 1 n.1 [Doc. No. 8]. Respondents do not rebut the allegation that Petitioner was detained at the airport at the time the Petition was filed, however, and offer no argument to challenge the conclusion that Petitioner's custodian was Mr. Scott, the Commissioner of United States Customs and Border Protection, at the time the Petition [Doc. No. 1] was filed.

1

additional briefing, Petitioner asserts that he is detained presently at Plymouth County Correctional Facility, in Plymouth, Massachusetts. Pet.'s Resp. at ECF 3 [Doc. No. 13].

Respondents argue that the <u>Petition</u> [Doc. No. 1] should be denied because Petitioner's 2014 convictions under Mass. Gen. Laws ch. 265, §§ 15A(a), 15(B)(b) constitute crimes involving moral turpitude, as described by 8 U.S.C. § 1182(a)(2)(A)(i). <u>See</u> Resp. 5–8 [Doc. No. 8]. Respondents argue therefore that, despite Petitioner's LPR status, he is inadmissible pursuant to 8 U.S.C. § 1101(a)(13)(C)(v) and the Immigration and Nationality Act ("INA") mandates his detention. <u>See</u> <u>id.</u> (citing 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding.")).

Respondents also argue that Petitioner has failed to exhaust his administrative remedies (i.e. request parole) and that his detention does not violate his due process rights because his detention is not unreasonably prolonged and Petitioner has an opportunity to challenge the CBP's inadmissibility determination before an Immigration Judge. <u>See</u> <u>id.</u> at 9–15. Petitioner does not respond to the government's assertions that he is properly detained pursuant to section 1225(b) or that he has failed to exhaust his administrative remedies. Instead, Petitioner reiterates that his convictions do not amount to crimes involving moral turpitude. Pet. Reply and Mot. for Release [Doc. No. 11]; Pet.'s Resp. to O.S.C. [Doc. No. 13].

## II.      Analysis

Generally, "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws." 8 U.S.C. § 1101(a)(13)(C). But a lawful permanent resident may be regarded "as 'seeking an admission' (and thus as not already admitted) if he 'has committed an offense

2

identified in section 1182(a)(2),' § 1101(a)(13)(C)(v), including a crime involving moral turpitude, § 1182(a)(2)(A)(i)(I)." Blanche v. Lau, 609 U.S. ___, 2026 WL 1791339, at *3 (June 23, 2026) (citing INA).

Respondents argue that Petitioner's 2014 assault convictions constitute crimes involving moral turpitude, rendering him inadmissible, and his detention mandatory under 8 U.S.C. § 1225(b). See Resp. 5–8 [Doc. No. 8]. The determination of whether Petitioner's convictions constitute crimes involving moral turpitude may be addressed by an Immigration Judge, with appeals as necessary to the Board of Immigration Appeals ("BIA") and the First Circuit. Mejia v. Holder, 756 F.3d 64, 68–69 (1st Cir. 2014) (remanding decision and ordering BIA to undergo categorical analysis in determining whether shoplifting constitutes a crime involving moral turpitude).

Notwithstanding Petitioner's charged inadmissibility, as a lawful permanent resident, he is still entitled to constitutional protections. The Due Process Clause of the Fifth Amendment forbids the Federal Government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). That protection applies to "noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020); see Reno v. Flores, 507 U.S. 292, 306 (1993) ("[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings."). The due process rights of LPRs are enhanced in comparison to noncitizens seeking initial entry to the United States. See Landon v. Plasencia, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his

3

constitutional status changes accordingly.") Specifically, LPRs "become[ ] invested with the

rights guaranteed by the Constitution to all people within our borders . . . includ[ing] those

protected by . . . the Fifth Amendment[,]" which does not "acknowledge[ ] any distinction

between citizens and resident aliens." Kwong Hai Chew v. Colding, 344 U.S. 590, 596 n.5

(1953).

But before determining what process may be due here, the court considers Respondents'

contention that Petitioner has failed to exhaust his administrative remedies.[2] Respondents note

that Petitioner can ask ICE to exercise its discretion and parole him from its custody while his

removal proceedings occur. See Resp. 14 [Doc. No. 8]. Petitioner does not address parole at all.

In Blanche, an LPR who was charged but not convicted of a crime was stopped on his

return travel back to the United States. As the Supreme Court explained:

> the border officer did not immediately decide whether [the LPR] was ultimately
> admissible. The INA allows the Government to parole certain aliens seeking
> admission instead of formally admitting them, detaining them, or removing them.
> [8 U.S.C.] § 1182(d)(5)(A). Parole allows an alien to physically enter the United
> States without being admitted. Ibid.; see also [id.] § 1101(a)(13)(B). Parole thus
> allows the Government to pause the inspection at the border and defer it to a later
> time without having to detain the alien pending a final admissibility decision, as
> would otherwise be required. [Id.] §§ 1225(a), (b)(2)(A); Jennings v. Rodriguez,
> 583 U.S. 281, 300 (2018). The Government exercised that authority to parole [the
> LPR] pending the resolution of his criminal case, instead of formally deeming
> him admitted.

---

[2] "There are two species of exhaustion: statutory and common-law." Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021). Statutory exhaustion "deprives a federal court of jurisdiction," whereas common-law exhaustion "cedes discretion to a [federal] court to decline the exercise of jurisdiction." Id. (alteration in original) (quoting Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174 (1st Cir. 2016)). "In other words, 'exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress'" while courts retain "more latitude in dealing with exhaustion questions when Congress has remained silent." Id. (quoting Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997)). While exhaustion is not required by statute in this circumstance, the court exercises its discretion to consider common-law exhaustion given the clear availability of that remedy. See Blanche, 2026 WL 1791339, at *3; Traore v. Decker, No. 19-cv-4612, 2019 WL 3890227, at *4 (S.D.N.Y. Aug. 19, 2019).

2026 WL 1791339, *3. Petitioner here offers no explanation for not seeking, through a request for parole, a similar resolution of the detention issue.

### III.   Conclusion

The court need not address at this time what process is due to Petitioner where has failed to exhaust his administrative remedies by not seeking parole while litigating his challenge to the border officer's determination that his 2014 assault conviction constitutes a crime involving moral turpitude.

Accordingly, the Petition [Doc. No. 1] is DENIED. If Petitioner requests and is denied parole, Petitioner may refile his Petition as a related matter.

IT IS SO ORDERED.

July 10, 2026                                                    /s/ Indira Talwani
                                                                United States District Judge